# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 189 | DATE | 11/1/2001 |
| CASE TITLE | Ocampo DeKalb, LLC et al. Vs. GMAC Commercial Mortgage etc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Both parties now moves for judgment on the pleadings. We grant judgment for plaintiffs.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | NOV 05 2001 date docketed | |
| ✓ | Docketing to mail notices. | | 27 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAH | courtroom deputy's initials | '01 NOV -2 AM 9:41 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
NOV 0 5 2001

OCAMPO DE KALB, LLC, et al.,        )
                                     )
        Plaintiffs,                  )
                                     )
vs.                                  )  No. 01 C 189
                                     )
GMAC COMMERCIAL MORTGAGE             )
CORPORATION,                         )
                                     )
        Defendant.                   )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ocampo Dekalb, LLC, Ocampo Belvidere, LLC, Ocampo Dixon, LLC and Ocampo Galesburg, LLC (collectively Ocampo) seek a declaration of their rights under a contract with defendant GMAC Commercial Mortgage Corporation (GMACCM). Both parties now move for judgment on the pleadings. For the following reasons we grant judgment for plaintiffs.

## BACKGROUND

The parties entered into a loan agreement on December 13, 1995. This contract permitted Ocampo to prepay all, or a portion, of the loans after the fourth anniversary of the loan date, December 13, 1999. But, if plaintiffs prepaid on or after the fifth anniversary, December 13, 2000, they would be liable for a yield maintenance premium.[1] Taken together, these provisions created a window, between the fourth and fifth anniversaries, during which Ocampo could prepay without being subject to any premium. The contract also required

---

[1] This section was actually written in the alternative, making plaintiffs liable for the greater of 1% of the prepayment amount, or a yield maintenance premium. *See* Section 15.01(b)(iii), *infra*. The premium, whose formula was defined elsewhere in the contract, was the operative provision here.

plaintiffs to give GMACCM between thirty and ninety days' notice before prepaying, and to pay interest through the end of the calender month in which the prepayment was made. The relevant provisions stated, in part:

> Section 15.01. Prepayment.
>
> (a) Except as set forth in Section 15.01(b) hereof, no prepayment of the Debt may be made in whole or in part.
>
> (b) At any time subsequent to the fourth (4th) anniversary of the date hereof, Mortgagor may prepay the Loan, in whole or, from time to time, in part, as of the last day of an Interest Accrual Period in accordance with the following provisions:
>
>> (i) Mortgagee shall have received from Mortgagor, no less than thirty (30) days', nor more than ninety (90) days', prior written notice specifying the date proposed for such prepayment and the amount which is to be prepaid.
>>
>> (ii) Mortgagor shall also pay to Mortgagee all interest due through and including the last day of the Interest Accrual Period in which such prepayment is being made, together with any and all other amounts due and owing pursuant to the terms of the Note, this Mortgage or the other Loan Documents.
>>
>> (iii) In the event that, from and after the fifth (5th) anniversary of the date hereof, and on or before the seventh (7th) anniversary of the date hereof, Mortgagor shall prepay all or any portion of the Loan Amount, ... Mortgagor shall be required to pay to Mortgagee on the date of such prepayment, in addition to the Principal Amount or portion thereof which is to be prepaid, a sum equal to the greater of (i) one percent (1%) of the Principal Amount or portion thereof which is to be prepaid and (ii) the Yield Maintenance Premium with respect to such prepayment.

On November 14, 2000, plaintiffs gave notice that they intended to prepay the loan between December 14 and December 31, 2000. Defendants maintain that plaintiffs missed the penalty-free deadline and must pay the premium, approximately $1 million. They assert that the plain language in the contract is clear: plaintiffs had to give notice by November 12, 2000,

and make the prepayment by December 12, 2000. Plaintiffs contend that they had until the end of the anniversary month, December 31, 2000, to make their prepayment. They claim that the discrepancy between the anniversary date, the 13th, and the interest accrual date, the end of the month, makes the contract ambiguous. Plaintiffs subsequently offered to make the payment on December 12, less than 30 days after they gave notice, but before the anniversary date. They assert that even if they are wrong about the deadline, equity demands they not be penalized $1 million for giving notice one day late.

## DISCUSSION

This contract, when read carefully, does not appear ambiguous. The prepayment had to be made by December 12, 2000, the day before the anniversary date. And Ocampo had to give notice by November 12, 2000, thirty days before that deadline. The fact that interest is due through the end of the month is immaterial.

The language, however, is not self-evident. Ocampo would be required to pay interest through the end of the month for any prepayment made in December. Any interest charged after the payment, *i.e.*, from payment date through the end of the month, would be, practically speaking, a penalty. Because plaintiffs believed this was supposed to be a penalty-free prepayment, they assumed that meant they could prepay through the end of the month.

Viewed as a whole, the contract does not support plaintiffs' interpretation. The fact that plaintiffs could have made completely penalty-free payments from December 31, 1999 through November 30, 2000, at least on the last day of each month during that period, does not entitle Ocampo to extend the premium-free period beyond the anniversary date. Nowhere does it say that the prepayment would be entirely penalty-free, nor that any such penalty-free

period would last exactly one year. It simply states that the yield maintenance premium would not apply to payments made during a specified period.

The contract, according to its choice-of-law provision, is governed by New York law. "It is a fundamental rule that equity will intervene to prevent a forfeiture where a delay in giving notice of renewal results from accident, fraud, surprise or mistake, and the lessor is not prejudiced by a change in position." Bank of New York v. Ulster Heights Properties, 114 A.D.2d 431, 433 (N.Y. App. Term 1985); *see also* Jones v. Gianferante, 111 N.E.2d 419, 420 (N.Y. 1953) (permitting equitable relief where a party's tardy notice "resulted from an honest mistake, or similar excusable fault").

We find that this principle is applicable here. Although we agree that GMACCM's reading of the contract is ultimately correct, it is not implausible that plaintiffs believed they could prepay until the end of the month in which the anniversary fell. They had nothing to gain from giving notice a day (or three days) late.[2] It appears undisputed that plaintiffs did honestly mistake the requirements. Further, there is no evidence that GMACCM would suffer any prejudice from receiving the payment a day or two late, particularly since Ocampo was prepared to make its prepayment on December 12. Consequently, the only harm to defendant was two days' fewer notice. This is insubstantial.

We discern three bases on which defendant opposes plaintiffs' attempt to invoke this principle: (1) the rule only applies to real estate; (2) equitable relief is only appropriate if the contract was indeed ambiguous; and (3) there was no forfeiture. We discuss each in turn.

Although both Bank of New York and Jones involved real estate, the principle they

---

[2]There is some dispute as to whether plaintiffs' notice was one, two or three days late. The exact number is irrelevant to our decision here, so we do not discuss this question further.

No. 01 C 189   Page 5

relied upon would seem to apply equally to other settings. Equity can intervene to prevent substantial harm to one party when doing so causes no prejudice to the other. Defendants have not presented any authority limiting such equitable relief to real estate, from New York or any other jurisdiction. We will not infer such an arbitrary distinction.

Defendant also argues that this equitable principle cannot apply because the contract is not ambiguous. As discussed above, we agree that, when carefully read, the contract is clear. But this does not end our inquiry. The rule is much broader than that. It includes "honest mistake, or other excusable fault," Jones, 111 N.E.2d at 420, "accident, fraud, surprise or mistake." Bank of New York, 114 A.D.2d at 433. This language does not impose an objective test. There is no requirement that a person could reasonably construe the contract as plaintiffs did. Rather, the language reflects a subjective test, meaning the plaintiffs need only establish their good faith belief. Ocampo made an honest mistake. That is all that these cases require.

Lastly, we turn to the question of forfeiture. Defendant claims that Ocampo had no inherent right to prepay the loan without paying a premium. In fact, GMACCM contends there was not supposed to be any penalty-free period at all, and that it resulted from a mistake at the origination of the loan. In contrast to a tenant who makes improvements to the leasehold in reasonable expectation of renewing, only to be dispossessed over a technicality, defendant argues that losing this unintended benefit should not be considered a forfeiture. But as we discussed above, the plain language is clear. Intended or not, Ocampo had a right to prepay the loan without incurring the yield maintenance premium until December 12, 2000. Losing that right, over a *de minimus* delay in notice, would be a forfeiture.

To avoid the yield maintenance premium, the contract required Ocampo to give notice

No. 01 C 189  Page 6

of its intent to prepay by November 12, 2000. Plaintiffs, due to a good faith mistake, gave notice on November 14. Because this would result in a substantial harm to plaintiffs, and the delay caused no real prejudice to defendant, New York law permits us to grant equitable relief.

## CONCLUSION

For the foregoing reasons we grant judgment on the pleadings for plaintiff.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

Nov. 1, 2001.